UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JEFFREY K. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:10-CV-00170 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Jeffrey Martin appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion.

## I. PROCEDURAL HISTORY

Martin applied for SSI on December 7, 2005, alleging that he became disabled as of November 1, 2004. (Tr. 10, 72-74, 85-86.) The Commissioner denied his application initially and upon reconsideration, and Martin requested an administrative hearing. (Tr. 47-55.) On August 12, 2008, Administrative Law Judge (ALJ) Yvonne Stam conducted a hearing at which Martin, who was represented by counsel, and a vocational expert ("VE") testified. (Tr. 248–62.)

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

On June 29, 2009, the ALJ rendered an unfavorable decision to Martin, concluding that he was not disabled despite the limitations caused by his impairments because he could perform a significant number of jobs in the national economy. (Tr. 7-18.) The Appeals Council denied Martin's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6.) Martin filed a complaint with this Court on June 3, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. MARTIN'S ARGUMENTS

Martin alleges four flaws with the Commissioner's final decision. Specifically, Martin claims that the ALJ: (1) failed to account for his moderate deficits in social functioning when assigning his residual functional capacity ("RFC") and posing hypotheticals to the VE; (2) improperly evaluated the opinion of Candace Martin, Ph.D., an examining psychologist; (3) failed to properly evaluate the evidence of his educational level; and (4) improperly discounted the credibility of his testimony of debilitating limitations. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 13-21.)

## III. FACTUAL BACKGROUND[2]

### *A. Background*

At the time of the ALJ's decision, Martin was fifty-two years old, had an eighth grade education, and possessed work experience as a productions assembler, clothes sorter, and tree trimmer helper. (Tr. 63, 82, 84-95, 177.) Martin asserts that he is disabled due to major depressive disorder, recurrent; borderline intellectual functioning; dysthymic disorder; intermittent explosive disorder; alcohol dependence; adult antisocial behavior; social phobia;

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 262-page record necessary to the decision.

chronic right ankle pain, status post trauma; chronic low back pain; chronic obstructive pulmonary disease ("COPD"); hypertension; and vision loss in the right eye. (Opening Br. 2.)

*B. Summary of the Medical Evidence*

On January 26, 2006, Martin underwent a mental status evaluation by Candace Martin, Ph.D., at the request of Social Security. (Tr. 183-87.) Martin showed no evidence of a thought disorder; his speech was relevant, coherent, and normal, but his vocabulary was below average. (Tr. 186.) His mood was notably frustrated and hopeless, and his affect was appropriate to his mood. (Tr. 186.) His social skills, judgment, insight, verbal concept formation, long-term memory, and short-term memory were adequate; however, his general information and abstract reasoning were weak, and his immediate memory was poor. (Tr. 185-86.) His focused attention, sustained concentration, and working memory skills were also adequate, although somewhat below average. (Tr. 183.) A WAIS-III indicated that Martin was functioning in the lower end of the borderline range of intellectual functioning. (Tr. 185-86.)

Dr. Martin opined that Martin's ability to function independently appeared to be limited only by his physical limitations, and that his depression appeared situational and was not likely to be the source of any work impairment. (Tr. 183, 185-86.) She found that he was capable of performing simple, routine, and repetitive work in a supervised setting that did not exacerbate his physical limitations. (Tr. 183.) She also noted that he seemed to have poor motivation and was easily irritated by others. (Tr. 183.) She assigned him a Global Assessment of Functioning ("GAF") score of 55 (reflecting moderate symptoms) and diagnosed him with dysthymic disorder, intermittent explosive disorder, alcohol dependence, antisocial behavior, social phobia,

and borderline intellectual functioning.[3] (Tr. 183.)

On February 8, 2006, Dr. Michael Holton examined Martin at the request of Social Security. (Tr. 189-91.) Dr. Holton noted that Martin had mild halting features when rising from a chair or getting on and off the examination table, an antalgic gait which favored the right leg, and significant guarding of his right hip. (Tr. 190.) Upon neurological exam, Martin's muscular strength and tone was 4/5 on the distal portion of his right lower extremity, but otherwise was normal. (Tr. 188-89.) Dr. Holton diagnosed Martin with chronic right ankle pain, status post trauma; chronic low back pain, status post fall, cannot exclude radiculopathy; chronic obstructive pulmonary disease; probable hypertension; visual loss of right eye; and history of learning disability. (Tr. 188-90.)

On May 5, 2006, Dr. Ken Neville, a state agency psychologist, reviewed Martin's record and concluded that Martin's mental impairments caused him moderate difficulties in maintaining social functioning and mild difficulties in daily living activities and maintaining concentration, persistence, or pace. (Tr. 201-17.) He further opined that Martin was moderately limited in the following abilities: understanding and remembering detailed instructions; completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without unreasonable rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

supervisors; traveling in unfamiliar places or using public transportation; and seeking realistic goals or making plans independently of others. (Tr. 202-03.) Dr. Neville concluded, consistent with Dr. Martin's report, that Martin was capable of performing simple, repetitive tasks in a setting that does not require extensive contact with the general public. (Tr. 201.) William Shipley, Ph.D., another state agency psychologist, later affirmed Dr. Neville's opinion. (Tr. 226.)

A few days later, Dr. Bruce Whitley, a state agency physician, reviewed Martin's record and concluded that he could lift or carry up to ten pounds frequently and up to twenty pounds occasionally; stand or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; perform unlimited pushing or pulling; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. (Tr. 218-25.) He also opined that Martin was limited in near acuity, far acuity, depth perception, and field of vision. (Tr. 222.) A second state agency physician later affirmed Dr. Whitley's opinion. (Tr. 227.)

On March 27, 2008, Dr. Martin evaluated Martin for the second time at the request of Social Security. (Tr. 230-33.) Martin appeared well-oriented and in good contact with reality with no evidence of a thought disorder; his concentration and attention, however, were limited. (Tr. 232.) His responses and vocabulary were below average, and his mood was despondent, discouraged, and pessimistic. (Tr. 232.) His social skills were marginal. (Tr. 232.) His fund of general information was weak, and his abstract reasoning was poor. (Tr. 232.) His verbal concept formation and long-term memory were adequate, but his judgment, insight, and short-term memory were weak. (Tr. 231.)

Dr. Martin concluded that Martin was in greater need of help and supervision from others

5

than in the past since he no longer had a girlfriend to help him. (Tr. 231.) His presentation at the interview was reflective of greater neglect of himself than two years ago, and he appeared more depressed and despondent than he had previously. (Tr. 230-31.) Dr. Martin noted that Martin did not appear to be receiving appropriate mental health services and that Martin did not see the need for help from such services. (Tr. 230-31.) Dr. Martin thought that his ability to function independently in daily living activities seemed limited. (Tr. 230-31.) In terms of his ability to engage in gainful employment, Dr. Martin found that he was of lower intellectual functioning and that he would likely have some cognitive weaknesses on the job, including memory, mentation, and general learning skills, which would limit his success in a traditional work setting. (Tr. 230-31.) She further opined that Martin's complaints of blindness, back and leg pain, and poor spatial judgment would make him a safety risk on manual labor jobs. (Tr. 230-31.) Dr. Martin assigned Martin a GAF of 45 (reflecting serious symptoms) and diagnosed him with major depressive disorder-recurrent, intermittent explosive disorder, alcohol dependence, adult antisocial behavior, and social phobia.[4] (Tr. 230-31.)

On April 17, 2008, Dr. H.M. Bacchus examined Martin at the request of Social Security. (Tr. 242-45.) On musculoskeletal exam, Martin showed an antalgic gait favoring his right ankle. (Tr. 244.) He had reduced range of motion in his lumbar spine, shoulder, knees, hips, and ankles. (Tr. 242.) His muscle strength and tone were four out of five in the right lower extremity but normal in his other extremities. (Tr. 242.) He diagnosed Martin with a history of right ankle fracture with mild degenerative disease, chronic low back pain, possible COPD with shortness of breath, tobacco abuse, probable hypertension, right eye blindness, and learning disability per

---

[4] *See* note 3, *supra*.

history. (Tr. 243.) Dr. Bacchus found that Martin needed evaluation and possible treatment for his COPD and hypertension but that with pain control, Martin appeared to maintain the functional capacity to perform general labor with appropriate precautions given the loss of vision in his right eye. (Tr. 243.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

7

## V. ANALYSIS

### A. *The Law*

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Martin is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See* 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

*B. The ALJ's Decision*

On June 29, 2009, the ALJ rendered her opinion. (Tr. 10-18.) She found at step one of the five-step analysis that Martin had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12.) At step two, she concluded that Martin had the following severe impairments: loss of visual field in the right eye, osteoarthritis in the bilateral lower extremities, and alcohol abuse. (Tr. 12.) At step three, she determined that Martin's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 13.) Before proceeding to step four, the ALJ found Martin's subjective complaints "not persuasive" to the extent they were inconsistent with the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except that he can never climb ladders, ropes, or scaffolds; can climb ramps and stairs only occasionally; can only occasionally balance, stoop, kneel, crouch, and crawl; and is limited in near and far acuity, depth perception, and field of vision.

(Tr. 14.)

Since Martin had no past relevant work, the ALJ determined at step five, based upon the RFC and the VE's testimony, that Martin could perform a significant number of jobs within the economy, including product assembler, marker in retail, and folder in laundry. (Tr. 17.) Therefore, Martin's claim for SSI was denied. (Tr. 18.)

*C. The ALJ Erred By Failing to Incorporate Martin's Moderate Deficits in Social Functioning into the RFC and Into Her Questioning of the VE at Step Five*

Martin argues that the ALJ erred by failing to incorporate her findings concerning Martin's moderate deficits in social functioning into the RFC and into her questioning of the VE at step five. (Opening Br. 16-17.) Martin's argument ultimately has merit and warrants a remand of the Commissioner's final decision.

9

In determining the severity of a claimant's mental impairment, the ALJ must address the claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a; *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then "incorporate" these limitations into the hypothetical questions posed to the VE at step five. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) (holding that the ALJ erred when neither his RFC nor his hypothetical question to the VE "[took] into account" his finding at step two that the claimant had deficiencies in concentration, persistence, or pace); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate *all* relevant limitations from which the claimant suffers." *Kasarsky*, 335 F.3d at 543 (emphasis added); *see also Stewart*, 561 F.3d at 684 ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.").

Here, at step three of his analysis, the ALJ found that Martin had moderate limitations in social functioning, as well as mild limitations in activities of daily living and maintaining concentration, persistence, or pace. (Tr. 13.) The ALJ, however, failed to specifically incorporate Martin's moderate deficits in social functioning into the RFC. (Tr. 14.)

Of course, the Seventh Circuit Court of Appeals has held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE. *See Milliken v. Astrue*, 397 Fed.

Appx. 218, 221-22 (7th Cir. 2010) (unpublished); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (concluding that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"). This, however, is *not* a case where the ALJ relied upon a medical source's translation of Martin's moderate deficits in social functioning into a specific RFC finding.

In January 2006, Dr. Martin opined that Martin appeared "capable of simple, routine, and repetitive work *in a supervised setting*". (Tr. 183 (emphasis added).) Likewise, in May 2006, Dr. Neville, the state agency psychologist, reviewed Martin's record and agreed that he was "capable of simple[,] repet[itive] tasks, *in [a] setting not requiring extensive contact with [the] general public*", and Dr. Shipley later affirmed this opinion. (Tr. 201 (emphasis added), 226.)

The ALJ, however, after giving "considerable weight" to the state agency psychologists' opinion and specifically finding at step three that Martin had moderate deficits in social functioning (Tr. 13, 16), then failed to incorporate these social limitations into Martin's RFC. *See Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (remanding case where ALJ failed to adequately account for claimant's social limitations in his RFC); *Richardson v. Astrue*, No. 1:08-cv-142-SEB-DML, 2009 WL 799543, at *6 (S.D. Ind. Mar. 23, 2009) (same). As emphasized *supra*, when an ALJ relies on a VE's testimony, the hypothetical questions based on the claimant's RFC must incorporate *all* of the claimant's limitations that are supported by medical evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Here, the ALJ has failed to do so.

In an attempt to avoid a remand, however, the Commissioner contends that "even if it were assumed that the ALJ did err by not incorporating a functional limitation related to [Martin's] social functioning, such error would be harmless . . . ." (Resp. Br. 14); *see Shramek v. Apfel*, 226 F.3d 809, 814 (7 th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination). The Commissioner then contends that "none of the representative unskilled jobs identified by the [VE] involved any significant interaction with other people according to the Dictionary of Occupational Titles" ("DOT"). (Resp. Br. 14 (citing U.S. Department of Labor, DICTIONARY OF OCCUPATIONAL TITLES §§ 209.587-034 (marker), 369.687-018 (folder), 706.687-010 (production assembler) (4th ed. 1991)).)

Yet, in reviewing the DOT descriptions of the three jobs identified by the ALJ (Docket # 26), there is no indication that the jobs involve only "not significant" interactions with others as the Commissioner contends. (Resp. Br. 14.) As Martin explains, the number "8" in the three DOT numbers indicates that the job involves "taking instructions— helping". *See* U.S. Department of Labor, DICTIONARY OF OCCUPATIONAL TITLES, Introduction. Here, however, Dr. Neville and Dr. Shipley specifically opined that Martin was moderately limited in his "ability to accept instructions and respond appropriately to criticism from supervisors", one of the categories of social interaction. (Tr. 202.) Of course, "even a moderate limitation on responding appropriately to supervisors may undermine seriously a claimant's ability to work." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). Therefore, the Commissioner's assertion that the ALJ's error was harmless is untenable, and the error must be corrected upon remand. *See generally Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010) (criticizing the Commissioner's lawyers

for "invoking an overbroad conception of harmless error" in social security appeals involving mental illness).

In sum, because the ALJ failed to incorporate Martin's moderate deficits in social functioning into the RFC and into her questioning of the VE at step five, and the Commissioner has not established that such error was harmless, the ALJ's step five conclusion lacks the support of substantial evidence and therefore must be remanded.[6]

## VI. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and this case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Martin and against the Commissioner.

SO ORDERED.

Enter for this 11th day of April, 2011.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge

---

[6] Because a remand is warranted on Martin's step-five argument, the Court does not need to reach his remaining three arguments concerning the ALJ's evaluation of Dr. Martin's opinion, his educational level, and his credibility.